# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| GEORGE W. MCDANIEL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM OPINION** |
| v. ) | **AND RECOMMENDATION** |
| ) | |
| MICHAEL J. ASTRUE, ) | 1:07CV779 |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

Plaintiff, George W. McDaniel, brought this action pursuant to section 205(g) of the Social Security Act, as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security partially denying his claim for a period of disability and Disability Insurance Benefits (DIB) under Title II of the Social Security Act (the "Act"). The parties have filed cross-motions for judgment, and the administrative record has been certified to the court for review.

## Procedural History

Plaintiff filed an application for DIB on January 27, 2003, with an alleged onset of disability (AOD) of March 7, 2001. Tr. 51. The application was denied initially and upon reconsideration. Tr. 29, 30. Plaintiff requested a hearing de novo before an Administrative Law Judge (ALJ). Tr. 43. Present at the hearing, held on July 12, 2006, were Plaintiff, his attorney, and a vocational expert (VE). Tr. 272.

By decision dated November 28, 2006, the ALJ determined that Plaintiff qualified for a partial period of disability, from his AOD through January 8, 2003. Tr. 18.

On August 16, 2007, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, Tr. 5, thereby making the ALJ's determination the Commissioner's final decision for purposes of judicial review.

In deciding that Plaintiff is not entitled to benefits, the ALJ made the following findings, which have been adopted by the Commissioner:

> 1. The claimant met the special disability insured status requirements under Title II of the Act as of March 7, 2001, his alleged disability onset date, and he continues to satisfy such requirements through at least the date of this decision.
>
> 2. The claimant has not engaged in substantial gainful activity since March 7, 2001.
>
> 3. The claimant has a "severe" right shoulder impairment that required multiple surgical procedures.
>
> 4. The claimant's impairments, either singularly or in combination, do not meet or equal in severity any of the criteria listed in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 5. The claimant's allegations at the hearing as to disabling symptoms, including pain, are deemed wholly credible only for the period prior to January 2003; on and subsequent thereto, for all of the reasons identified in the text of this decision, such allegations are inconsistent with the non-medical and medical evidence of record and, thus, are not entirely credible. Specifically, since January 2003, the claimant's allegations of symptoms, including pain, are deemed credible only to the extent that they are consistent with finding No. 7 below regarding his RFC (residual functional capacity) (20 CFR 404.1529 and SSR 96-7p).
>
> 6. Prior to January 2003, the claimant had a very limited RFC in that he was unable to perform a substantial range of any gainful work activity, including a substantial range of unskilled sedentary and light work as defined in the regulations (20 CFR 404.1545/404.1567 and SSRs 83-10/96-8p).

7.  Since January 2003, the claimant has had medical improvement as described in the MIRS (medical improvement review standard) in the regulations, in that he has retained the RFC to perform a modified but substantial range of light work as defined in the regulations (20 CFR 404.1545/404.1567/404.1594(b)(1) and SSRs 83-10/96-8p).

8.  In comparing the two RFCs in findings No. 6 and 7 above, the claimant, since January 8, 2003, has had a substantial increase in his RFC, thereby establishing that his medical improvement is related to his ability to work (20 CFR 404.1594(b)(1) and 404.1594(b)(3)).

9.  For the reasons cited in the text of this decision, the claimant has been unable to perform his past relevant work as a light delivery truck driver (20 CFR 404.1565 and SSRs 82-61/82-62).

10.  The claimant, born on March 9, 1955, previously was 45-49 years old from March 7, 2001 to March 9, 2005, which previously classified him as a "younger individual;" since March 9, 1955 [sic], the claimant was 50-51 years old, which is defined as "closely approaching advanced age" (20 CFR 404.1563).

11.  The claimant has a high school education, is literate as defined in the regulations, and is more than capable of communicating in English (20 CFR 404.1564).

12.  The vocational expert's testimony established that the claimant's work skills are not transferable to other semi-skilled or skilled work in the national economy (20 CFR 404.1568).

13.  Prior to January 8, 2003, considering the claimant's very limited RFC that is identified above in finding No. 6 and his age, education, and work experience, he was not capable of making an adjustment to work that existed in significant numbers in the national economy; ***from March 7, 2001 to January 8, 2003, the Medical-Vocational Guidelines in 20 CFR Part 404, Subpart P, Appendix 2 and the adjudicatory guidance of SSR 96-9p previously provided a framework of reference for finding the claimant "disabled."***

14.  ***Since January 8, 2003,*** considering the claimant's age, education, work experience and RFC as detained [sic] in above finding No. 7, ***Rules 202.14 and 202.21, in Table No. 2, 20 CFR Part 404,***

3

Case 1:07-cv-00779-JAB-WWD   Document 15   Filed 04/03/09   Page 3 of 17

*Subpart P, Appendix 2 and the vocational expert's testimony provide a framework of reference for finding him "not disabled."*

15. **The claimant's "disability," that commenced March 7, 2001, is hereby ceased effective with January 8, 2003 (20 CFR 404.1594(f)(7)).**

16. The claimant was under a "disability," as defined in the Social Security Act, from March 7, 2001 to January 8, 2003, but not on and subsequent thereto (20 CFR 404.1520(g)).

Tr. 25-26.

## Analysis

In his brief before the court, Plaintiff argues that the Commissioner's findings are in error because the ALJ failed to give controlling weight to the opinion of Plaintiff's treating physician. The Commissioner contends otherwise and urges that substantial evidence supports the determination that Plaintiff was not disabled.

<u>Scope of Review</u>

The Act provides that, for "eligible"[1] individuals, benefits shall be available to those who are "under a disability," defined in the Act as the inability:

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to

---

[1] Eligibility requirements for DIB are found at 42 U.S.C. § 423(a)(1).

result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A).[2]

In the initial determination of disability, the Social Security Administration ("SSA"), by regulation, has reduced the statutory definition of "disability" to a series of five sequential questions.  An examiner must determine whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Act's listing of impairments, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing any other work.  Section 404.1520.

Once the decision has been made to grant a claimant benefits, however, there is no presumption of continuing disability.  See 42 U.S.C. § 423(f)(4).  The initial determination – the "comparison point decision" – is used as a reference point from which to evaluate whether any medical improvement has been realized relating to

---

[2] The regulations applying this section are contained in the Code of Federal Regulations (C.F.R.) at Title 20, "Employees' Benefits," and all regulatory references will be thereto.

5

the individual's ability to work.[3]  Id. § 423(f).  The Commissioner defines "medical improvement" as:

> any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled.  A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s)[.]

Id.

In turn, the medical improvements that are relevant to a disability determination must be those that increase an individual's functional capacity to engage in gainful activity, i.e., the ability to do basic work.  Section 404.1594(b)(3), (4).  To make this determination, the Commissioner employs an eight-step sequential analysis:

(1) is the beneficiary working;

(2) if not, does the impairment meet or equal a listing;

(3) if not, has there been "any" medical improvement;

---

[3] Although the court could not find a Fourth Circuit decision on this issue, those circuits which have directly addressed the question generally agree that "medical improvement" is the appropriate standard to be utilized in "closed period" cases such as this one.  See Waters v. Barnhart, 276 F.3d 716, 719-20 (5th Cir. 2002); Shepherd v. Apfel, 184 F.3d 1196, 1198 (10th Cir. 1999); Jones v. Shalala, 10 F.3d 522, 523-24 (7th Cir. 1993); Pickett v. Bowen, 833 F.2d 288, 293 (11th Cir. 1987); see also Chrupcala v. Heckler, 829 F.2d 1269, 1274 (3d Cir. 1987) ("Fairness would certainly seem to require an adequate showing of medical improvement whenever an ALJ determines that disability should be limited to a specified period.").  But see Camp v. Heckler, 780 F.2d 721, 721-22 (8th Cir. 1986) (reading the enacting legislation to refer "to a previous decision in favor of disability, followed by the claimant's receipt of benefits, further followed by a new proceeding resulting in cessation or termination on the ground of medical improvement").

(4) if medical improvement, does such improvement relate to the ability to work;

(5) if no improvement, does an exception[4] apply;

(6) if there is an improvement related to work ability, are the current impairments, alone or in combination, "severe";

(7) if there is a severe impairment, does the beneficiary's residual functional capacity (RFC) permit performance of past work;

(8) if not, does the beneficiary have the RFC to perform other work.

Section 404.1594(f)(1)-(8). If the Commissioner finds conclusively that a claimant is disabled at any point in this process, review does not proceed to the next step. See id.

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. Richardson v. Perales, 402 U.S. 389 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). Consequently, the Act precludes a de novo review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. See Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (citing Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). Substantial evidence is:

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is

---

[4] None of the "exceptions," listed in subsection (e) of the regulation, are applicable hereto.

evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that this conclusion is rational. Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

Issue

Medical Improvement

Plaintiff first posits that the records of his "treating physician," orthopaedic specialist Dr. Robert Sypher, Jr., "undisputably demonstrate" that his condition, instead of improving, has deteriorated since January 2003, but Plaintiff employs an incorrect standard.[5] Pl.'s Br. at 8.

The ALJ extensively summarized Dr. Sypher's records from February 5, 2001, through June 7, 2006. See Tr. 18-19. The ALJ observed that on March 8, 2001, Plaintiff underwent extensive debridement of adhesive capsulitis, extensive

---

[5] Plaintiff argues that the ALJ erred "in concluding that [Plaintiff] was not disabled by his physical impairments for the period after January 8, 2003," because the ALJ did not give controlling weight to Dr. Sypher's opinion. Pl.'s Br. at 8. Yet Plaintiff fails to explain how such failure would establish that he was still disabled after January 8, 2003. Specifically, Plaintiff fails to allege how the ALJ erred in his RFC determination.

8

capsulectomy and tenolysis of the subscapularis tendon, extensive bursectomy and scar removal from the subacromial space, with a distal clavicle resection. Tr. 246; see also Tr. 18 (citing Tr. 121). This is the date from which the ALJ found Plaintiff to be disabled, and, thus, it is the "comparison point decision." See Pickett v. Bowen, 833 F.2d 288, 292 n. 2 (11th Cir. 1987) (finding that, with respect to "closed period" claims, "[t]he 'onset date' (i.e., the date disability was determined to exist) is used as the comparison point with the present to determine if 'medical improvement' has occurred."); Booms v. Commissioner of Soc. Sec., 277 F. Supp. 2d 739, 745 (E.D. Mich. 2003) (finding the Commissioner's use of the disability onset date as the comparison point date in a closed period case to be "consistent with 42 U.S.C. § 423(f) and with the Secretary's regulation, 20 C.F.R. § 404.1594.").

The ALJ further noted Dr. Sypher's observation that, as of May 21, 2001, Plaintiff's pain remained "problematic." Tr. 18 (citing Tr. 241). Because Plaintiff experienced no appreciable decrease in pain and/or functional range of motion in his right shoulder, Dr. Sypher performed another surgical procedure, Plaintiff's fourth. See Tr. 142. Plaintiff, however, continued to have complications, and Dr. Sypher decided to perform a surgical revision of Plaintiff's right shoulder hemiarthroplasty. See Tr. 230; see also Tr. 161. At Plaintiff's visit some four months after this fifth surgery, Dr. Sypher characterized him as "essentially a full time physical therapy attendee." Tr. 223.

9

The ALJ decided that, during this period, Plaintiff

> obviously was unable to perform a substantial range of any type of gainful employment in a competitive work setting. In this regard, while he remained capable of perhaps lifting/carrying 20 pounds on occasion with his left arm, his substantial problems with his right shoulder prevented him from occasionally lifting/carrying even 5 pounds.

Tr. 20. As a result, Plaintiff could not effectively perform tasks requiring bimanual dexterity, suffered postural limitations, and could not work in hazardous conditions. In addition, the ALJ found that Plaintiff's "incapacitating pain" rendered him "unable to concentrate sufficiently to understand, remember, and carry out simple repetitive tasks." Id.

Accordingly, the ALJ concluded that Plaintiff, from the AOD through January 1, 2003, was unable to perform a substantial range of either unskilled sedentary or light work. Given this RFC, together with Plaintiff age, education, and work experience, the ALJ decided that Plaintiff was disabled during the closed period from March 7, 2001, to January 8, 2003.[6]

---

[6] On November 27, 2002, Dr. Sypher stated, "There is no reason why [Plaintiff] could not do a sedentary or light duty that does not involve lifting with the right arm." Tr. 217. But the ALJ objected that he was

> unable to afford credibility thereto for the period prior to January 8, 2003. There were not laboratory or clinical findings provided in support of [this statement]. Also, such an opinion is inconsistent with Dr. Sypher's treatment notes as a whole for the period prior to January 8, 2003, which clearly established that the functional problems with [Plaintiff's] right upper extremity and pain effectively precluded any gainful activity on a regular and sustained basis.

Tr. 20.

After Plaintiff's fifth surgery, however, the ALJ found that Dr. Sypher "documented gradual improvement in the functional use and passive range of motion involving [Plaintiff]'s right shoulder." Tr. 19. On August 7, 2002, Dr. Sypher noted that Plaintiff had active elevation of ninety degrees, external rotation of sixty degrees, and internal rotation to his waist. Tr. 221. He had good strength in his deltoid, and Dr. Sypher asked Plaintiff's rehabilitation specialist "to begin a vocational rehabilitation evaluation for an anticipated return to work to a cognitive duty with less than [ten pounds] lifting." Id.

By October 16, 2002, Plaintiff's active elevation had increased to ninety-five degrees, and his external rotation to eighty-five degrees. Tr. 219. In addition, Plaintiff's active abduction was at 110 degrees, and he had equal grip strength. In a letter to the insurance company, Dr. Sypher indicated his belief that Plaintiff would be able "to return to gainful employment in a non-lifting capacity." Tr. 218.

The ALJ decided that, "since January 8, 2003, Dr. Sypher's treatment notes of record establish that claimant has had considerable improvement in the functional use of his right upper extremity." Tr. 22; see also Tr. 216. Dr. Sypher recorded on January 29, 2003, Plaintiff's passive elevation at 140 degrees, abduction at 150 degrees, and external rotation at seventy degrees. Tr. 213. The flexion strength of Plaintiff right shoulder was seventy percent of his left. Dr. Sypher deemed Plaintiff to have reached maximum medical improvement ("MMI") and released him from care, to be seen on an as-needed basis. Plaintiff did not return until a year later, see

11

Tr. 212, and then again in March, see Tr. 265, but thereafter, only on an annual basis, see Tr. 263, 265.

Plaintiff argues that his worsening condition is evident from Dr. Sypher's downgrading of his disability rating from fifty percent of his right shoulder to sixty percent, and the documentation of "additional problems that were not present prior to that date." Pl.'s Br. at 9. But Plaintiff fails to utilize the correct standard. SSA defines "medical improvement" as "*any decrease* in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled." Section 404.1594(b)(1) (emphasis added). As discussed above, Plaintiff's "most recent favorable medical decision" is his AOD.

The regulation continues:

> For purposes of determining whether medical improvement has occurred, we will compare the current medical severity of that impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled to the medical severity of that impairment(s) at that time.

Section 404.1594(b)(7). SSA further explains that it

> interprets the term "current," as used in the statutory and regulatory language concerning termination of disability benefits, to relate to the time of the cessation under consideration in the initial determination of cessation. In making any initial determination that a claimant's disability has ceased, SSA considers the claimant's condition at the time SSA is making the initial determination. In deciding the appeal of that cessation determination, the Secretary considers what the claimant's condition was at the time of the cessation determination, *not the*

12

*claimant's condition at the time of the disability hearing/reconsideration determination, ALJ decision or Appeals Council decision.*

"Scope of Review on Appeal in a Medical Cessation of Disability Case--Title II of the Social Security Act," 57 Fed. Reg. 9262, 9264 (Mar. 17, 1992) (emphasis added).

Thus, the ALJ compared Plaintiff's RFC as of his AOD (which the ALJ deemed to be less than a substantial range of unskilled sedentary or light work) to that date where medical improvement had been realized relating to Plaintiff's ability to work. In performing the analysis, the ALJ stated:

> Obviously, since January 2003, the functioning of the claimant's right arm has improved *when compared with his limited status prior thereto*, at which time he was undergoing multiple surgical procedures on his right shoulder. The undersigned concludes that, since January 1, 2003, the claimant's declining medical treatment belies a finding that his pain and functional limitations were as severe as they were prior thereto.

Tr. 23 (emphasis added).

The ALJ's reasoning, as summarized above, clearly demonstrates that, as of January 8, 2003, Plaintiff had experienced medical improvement since the time of his AOD such that his RFC increased. That Plaintiff's condition may have thereafter deteriorated is of no moment; if he again becomes disabled, his remedy is to file a new application. See 57 Fed. Reg. at 9264. See also 42 U.S.C. § 416(i)(2)(A) (defining a "period of disability" as a "*continuous* period ... during which an individual was under disability" (emphasis added)).

Moreover, Dr. Sypher's records post-dating January 8, 2003, fail to establish that Plaintiff did not experience medical improvement as compared to March 7,

13

2001.  Even mentioning Plaintiff's left wrist complaint, the doctor released Plaintiff on January 20, 2003, "to return to a desk type duty."  Tr. 214.  When Plaintiff saw him in March 2004, Dr. Sypher increased his disability rating from fifty to sixty percent, yet recommended that he pursue vocational rehabilitation, only restricting Plaintiff to no lifting over five pounds with the right arm and no overhead lifting with his right arm.  Tr. 211.

When Plaintiff next returned, thirteen months later, he complained of chronic gout[7] and left shoulder pain.  Tr. 265.  But Dr. Sypher noted that "a reasonable degree of pain control" had been achieved, although Plaintiff was "still painful when he sleeps at night."  Id.  Plaintiff's examination revealed full motion of the left shoulder and no sign of painful impingement.  X-rays of his right shoulder demonstrated that his surgical intervention was satisfactory and stable.  See Tr. 266.  Dr. Sypher recommended that Plaintiff attend community college to "increase his employment prospects," and suggested that Plaintiff "should be able to work at a bench without significant restriction other than his need to take pain medicine."  Id.

Plaintiff further disputes the ALJ's finding that his hearing testimony, with regard to his pain and functional limitations post-January 8, 2003, was not "entirely credible."  Tr. 24.  The ALJ may indeed have misconstrued Dr. Sypher's finding of

---

[7] Plaintiff testified that his gout is "pretty well controlled with medication except when I have an attack," Tr. 282, and there is no evidence that he suffered an attack after his AOD; Plaintiff told the consultative examiner that he had had only one attack since 1998, Tr. 206.

14

MMI, as Plaintiff contends. See Tr. 24 (the ALJ believed that the MMI finding "suggests the claimant has more function and right shoulder range of motion than he continues to admit"). But the ALJ added that the decline in Plaintiff's office visits belies the severity of his complaints, and the law supports the ALJ's position. Social Security Ruling 96-7p advises:

> Persistent attempts by the individual to obtain relief of pain or other symptoms, such as by increasing medications, trials of a variety of treatment modalities in an attempt to find one that works or that does not have side effects, referrals to specialists, or changing treatment sources may be a strong indication that the symptoms are a source of distress to the individual and generally lend support to an individual's allegations of intense and persistent symptoms.

61 Fed. Reg. 34483-01, 34487. See also Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005) (the failure to seek help constitutes a reason for discounting subjective claims). There is no evidence that Plaintiff pursued any of these options.

The ALJ also referred to Dr. Sypher's impairment rating of sixty percent, and notation that a "reasonable degree of pain control" had been achieved. Tr. 24. Such ratings, however, "involve[] an entirely different inquiry from a determination of 'disability' within the meaning of the Social Security Act." Diaz v. Chater, 55 F.3d 300, 310 (7th Cir. 1995). And if symptoms are, or can be, reasonably controlled by medication, they may not be considered disabling under the Act. Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986). See also Gossett v. Bowen, 862 F.2d 802, 807 (10th Cir. 1988) (a claimant's inability to work pain-free is not sufficient reason to support a finding of disability).

15

Plaintiff alleges that the VE testified that, if Plaintiff's testimony was credible, Plaintiff would not be able to work. But the VE based his statements on Plaintiff's *left* arm complaints: "In addition to the right arm difficulties that he would have, [the left arm complaints] would truly limit his ability to sustain and maintain work on a full-time basis." Tr. 297. As of January 8, 2003, Plaintiff had no left arm complaints. See Tr. 216. Not until a year later did Plaintiff complain to Dr. Sypher of left shoulder pain. See Tr. 212.

When Dr. Sypher recommended restrictions for Plaintiff's right arm, he advised that Plaintiff lift "with the left arm only." Tr. 211. At his next visit, in June 2005, the doctor observed that Plaintiff had "full motion on the left and no sign of painful impingement." Tr. 266. At his annual recheck in June 2006, Dr. Sypher noted no left arm or shoulder complaints. See Tr. 263. Accordingly, the ALJ's credibility decision as to Plaintiff's left shoulder complaints, particularly as of January 8, 2003, is supported by substantial evidence and results in no error in the VE's response.

**Conclusion and Recommendation**

For the foregoing reasons, the decision of the Commissioner is supported by substantial evidence and the correct legal principles were applied. Therefore, **IT IS RECOMMENDED** that the Commissioner's decision finding no disability be **AFFIRMED**. To this extent, Plaintiff's motion for summary judgment (pleading

16

no. 11) seeking a reversal of the Commissioner's decision should be **DENIED**, Defendant's motion for judgment on the pleadings (pleading no. 13) should be **GRANTED**, and this action should be **DISMISSED** with prejudice.

                                                    */s/ Wallace W. Dixon*
                                                    WALLACE W. DIXON
                                                    United States Magistrate Judge

April 3, 2009